# EXHIBIT 1

DigiSigner Document ID: 224559d7-35f5-4784-adb4-5d91834b6d12



# Letter of Engagement

1551 N. Tustin Ave, Suite 190
Santa Ana, CA. 92705
**Direct:** 707-284-3026
**Fax Number:** 714-784-7821
**Email:** info@nationalcreditpartners.org
**Website:** www.nationacreditpartners.org

## Client Application

| COMPANY INFORMATION ||
|---|---|
| Legal Name of Entity: RPL Real Estate LLC | Business Inception Date: 04/02/2012 |
| Federal Tax ID (EIN): 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 | State Where Business Was Formed: CN |
| Legal Structure: ○ Corporation ○ LLC ○ Partnership ○ Sole Proprietorship ||
| Full Time Employees: 11   Part Time Employees: | Type of Industry: |
| Business Address: 454 Forbes Ave ||
| City: East Haven   State: CT   ZIP Code: 06512 | Estimated Monthly Revenue: $200,000.00 |
| Phone: (203) 676-9788   Ext: | Website: fullyrenovatedhomes.com |

| BUSINESS OWNER |||
|---|---|---|
| Full Name: Robert Letskus Jr || Date of Birth: 04/17/1978 |
| Primary Address: 121 Russo Ave, Unit 5 |||
| City: East Haven | State: CT | ZIP Code: 06513 |
| Home Phone: (203) 676-9788 | Mobile Phone: ||
| E-mail: rletskusjr@aol.com | Social Security #: 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 ||
| Driver's License #: 166729423 | Driver's License State: CT | Ownership %: 100 |

| BUSINESS OWNER 2 |||
|---|---|---|
| Full Name: || Date of Birth: |
| Primary Address: |||
| City: | State: | ZIP Code: |
| Home Phone: | Mobile Phone: ||
| E-mail: | Social Security #: ||
| Driver's License #: | Driver's License State: | Ownership %: |
| Business Owner Signature:<br><br>*Robert Letskus* | Business Owner 2 Signature: ||
| Title: Owner | Title: ||
| Date: 01/18/2019 | Date: ||

Initial *RPL* /_____

Page 2



# NCP Letter of Engagement

This Letter of Engagement between KVC Group, LLC, a partner of National Credit Partners ("NCP") at 1551 N. Tustin Ave, Suite 190, Santa Ana, CA 92705 and _____RPL Real Estate LLC_____as ("Client") with address_____454 Forbes Ave East Haven, CT 06512_____confirms the terms and conditions that NCP will represent Client concerning Client's unsecured business debts and related financial circumstances associated with those debts (the "Agreement"). NCP and Client are also referred to individually in this Agreement as a "Party" and jointly as the "Parties."

1. NCP's Business Debt Management Services

   Client has agreed to retain NCP to represent Client in attempting to resolve Client's unsustainable unsecured business debt burden identified on the attached Creditor Listing disclosed to NCP ("Enrolled Debt"). This program is a hardship program designed for businesses who have concluded that it is untenable for them to continue meeting their financial obligations without a restructuring of their debt.

2. Enrolled Debt

| Creditor | Account # | Balance |
|---|---|---|
| Credibly | | $69,129.72 |
| Fundworks | | $39,330.91 |
| orward Finance -Fast Capital 36 | | $31,050.00 |
| Mantis | | $7,967.00 |
| Bluevine | | $19,138.78 |
| | | |
| | | |

3. Inactive Debts

   Some creditors may write off My Enrolled Debt, in which case I would save the entire amount owed. However, creditors will not typically confirm that they have written off an Enrolled Debt. Therefore, if any creditor makes no attempt to collect an Enrolled Debt for any one hundred and twenty (120) day period after the initial contact from NCP will cease its settlement efforts on that Enrolled Debt and the Enrolled Debt will be deemed an Inactive Debt. NCP will make at least five (5) different settlement attempts to a creditor before an Enrolled Debt is deemed inactive. An Enrolled Debt cannot be withdrawn from the Program once NCP has notified Client that the creditor has ceased collection activity on that Enrolled Debt. For Enrolled Debts that are Settled or become Inactive Debts there is a Settlement Success Fee of 25% of the amount saved on the Enrolled Debt.

Initial:_RPL_/_____

DigiSigner Document ID: 224559d7-35f5-4784-adb4-5d91834b6d12



# NCP Letter of Engagement

4. **Inactive Debts Guarantee**

   If a creditor whose Enrolled Debt has been deemed an Inactive Debt resumes collection efforts on that Inactive Debt, NCP will credit my escrow account for the Success Fee that was charged on that Inactive Debt and resume settlement efforts once I resume making installment payments, even if I have already completed the Program. Once NCP resumes settlement efforts, Success Fees will apply upon Settlement or Restructure.

5. **Settlements**

   Clients with a lump sum of the enrolled debt amount to pay off creditors in a Success Fee of 25% of the amount saved on the Enrolled Debt. "Settled" or a "Settlement" for the purpose of this Agreement is when the balance I owe to a creditor is reduced from the balance I owed when the Enrolled Debt was entered into the NCP Program. The "amount saved" on the Enrolled Debt for purposes of calculating the Settlement Success Fee is the Enrolled Debt Amount less the Settlement Amount.

   If NCP obtains a Settlement offer that reduces the balance I owe by 40% or better, Client is authorizing NCP to accept the settlement without Client consent. Settlement Success Fees due to NCP as set forth in this Agreement.

   For Enrolled Debts enrolled for modifications that are resolved with both a Settlement and a Restructured payment arrangement, both the Settlement Success Fee and the Restructure Success Fee may apply. The Success Fee will be 10% of the amount saved on these Enrolled Debts in addition to the enrolled service fee.

6. **Communication with Creditors**

   If creditors continue to contact my company after I enroll in NCP 's Program, I agree to refer all calls and correspondence to NCP . I agree not to negotiate with or settle with my creditors directly because it could compromise the entire Program. If I negotiate with, settle with, or come to payment arrangements with any creditor or representative of any creditor concerning an Enrolled Debt, I understand that I am still obligated to the terms and conditions of this Agreement, and "NCP" reserves the right to collect the remaining Service Fee of the Enrolled Debt, which shall be due and payable immediately.

7. **Enrolled Debt Amount**

   a. I understand that if I previously agreed to pay any interest, finance charges, late fees, collection or other costs associated with late or nonpayment, then those amounts may increase until the underlying Enrolled Debt is settled. If any creditor validates an amount owed that is greater than the amount I submitted during enrollment, the validated amount will be deemed the Enrolled Debt Amount for all purposes, and My Enrollment Fees may increase accordingly.

Initial: _RRL_/_____

Page 4



# NCP Letter of Engagement

    b. I understand that if an enrolled debt amount decreases due to either or ongoing payments to your creditors by "Client" or funds are obtained from a creditor by other means, the program fee remains the same as the original enrolled balance at the date of enrollment into the program.

8. Program Length

| | |
|---|---|
| Estimated Total Debt Amount | $ 166,616.41 |
| Estimated Program Length (Monthly) | 8 |

Client acknowledges that this is a structured program that requires Client to accumulate money over an agreed upon time period that can then be utilized by NCP to effectuate potential modifications or settlements of Client Debt. Because this program requires accumulated savings to effectuate such a settlement or modification, Client acknowledges and agrees that this program is not a quick-fix solution for resolving Client's debt burden.

9. NCP's Performance Standard

NCP maintains a standard of representation for each individual account included in the NCP debt restructuring plan. NCP will endeavor to achieve a target debt reduction or modification agreed on the debt's balance. Client further acknowledges and agrees that creditors are not obligated to compromise any of the debt enrolled in this program and, as a result, Client agrees not to withhold unreasonably consent for any reasonable restructuring offers obtained by NCP within its Performance Standard outlined herein

NCP is in partnership with **law firms nationwide**. NCP may engage with other legal entities from our Network of Attorney's and other Law firms without consent from "Client" to protect your business. Special licensing may be required for your creditors. Our attorneys have the experience defending you against creditor lawsuits and FDCPA violations.

10. Scope of Engagement

NCP structures its practice as a group practice. NCP does not guarantee any minimum level of participation in a case by any individual employee, member, or partner of the firm. NCP agrees to assign qualified personnel, in its sole discretion, to various aspects of the case pursuant to its group practice and in compliance with all applicable rules of professional conduct. The scope of NCP's representation concerning the services to be provided under this Agreement is specifically limited to the following:

    a. Review of Client's Debt Situation. NCP will review Client's current unsecured business debt burden, and thereafter negotiate, and attempt to enter into settlements or modify with Client's creditors in an effort to resolve Client's current unsecured business debt.

Initial: _RRL_/_____

DigiSigner Document ID: 224559d7-35f5-4784-adb4-5d91834b6d12



# NCP Letter of Engagement

b. Negotiate and Resolve Client Debt. NCP's obligation to negotiate shall apply only to specific unsecured business debt obligations as disclosed by Client and accepted by NCP under this Agreement ("Client Debt"). The details of such obligation are included in the Creditor Listing Form, which is expressly incorporated by reference into this Agreement.

c. Service Fees Breakdown:
  - 17% service fee of the total enrolled debt
  - $1,200 processing fee

11. Services Not within Scope of Representation

NCP will not provide any services to Client that is not specifically identified in the preceding paragraphs, including, without limitation, any services related to the following:

a. Accounting, financial planning, or tax advice
b. Appeals of any judgment
c. Attempts to repair credit or correct entries on credit reports
d. Bankruptcy services
e. Any guarantees of complete elimination of harassment or collection calls from creditors or collectors, except as provided for within this Agreement.
f. NCP is unable to procure further legal support based upon Client's situation to reduce and/or eliminate the harassment from creditors and/or collectors
g. Litigation Defense Services for trial in any lawsuit served on the Client
h. Representation of Client in any matter before a court, including foreclosure proceedings or in any arbitration hearing, except as expressly set forth in this Agreement.
    i. Limitation of Liability
    ii. NCP is not liable for any Enrolled Debt I owe. NCP operates on a best efforts basis. I agree to limit NCP's liability in connection with this Agreement for any and all claims, losses, costs, and damages of any nature, including third party claims and attorneys' fees and costs, so that the total aggregate liability of NCP to Client and, if any, shall not exceed the amount of the Fees paid by Client and to NCP pursuant to this Agreement. Should NCP make such reimbursement to Client, no other or further liability shall exist from NCP to Client. It is intended that this limitation apply to any and all liability or cause of action that can be asserted by Client on behalf of Client against NCP, however alleged or however arising, unless such limitation is prohibited by law. In no event shall NCP be held liable for consequential damages, incidental damages, punitive damages, attorney fees or other related costs.

Initial: *RRA*



# NCP Letter of Engagement

12. **Terms, Conditions, and Representations**
    As a condition of NCP's representation of Client, Client will:

    a. Provide NCP with updated, truthful, accurate and complete information and documents relating to the Client Debt. Such information must contain current account balances and the name of the creditor and account number;
    b. All the debt I have enrolled in the NCP Program are business debts and were not used for personal or other non-business purposes.
    c. I agree that I will not take out any other loans, merchant cash advances, lines of credit, or similar advances during the time I am in the NCP Program.
    d. I did not take on any of the enrolled debt with the intent to default or defraud.
    e. I am not enrolling in the NCP Program with the intent to defraud my creditors.
    f. My execution of and/or my performance under this Agreement will not cause or create an event of default or breach under any contract with any person or entity.
    g. NCP is under no obligation to verify the information supplied by Client
    h. Forward all correspondence from creditors and collection agencies, including collection letters, demands and complaints to NCP within five (5) days of receipt
    i. Not engage in debt restructuring discussions with creditors or collection agencies who call Client
    j. If a creditor or collection agency engages in harassing or abusive conduct, Client will promptly notify NCP and provide complete and accurate information regarding such contacts.
    k. Notify NCP in writing by mail, email or fax if Client directly receives settlement offers from any creditors.
    l. Such notification shall include all terms and conditions of any settlement offers, whether they were made orally or in writing, so that NCP can undertake negotiations with that company directly.
    m. Expect that, on occasion, personal involvement in the negotiations and settlement process may be needed as part of the representation and understand that such personal involvement does not change any of the terms, including any fees, under this Agreement.
    n. Timely respond to all requests or communications from NCP or its representatives, and promptly provide NCP with any change of address or other contact information.
    o. Based on the advice of NCP, determine and agree to a schedule of payments based on the total amount of debt to be modified, including payment of appropriate fees and costs to NCP ("Program Fees"). A copy of said schedule is attached hereto, incorporated by reference.
    p. Client agrees to
        i. Make all the payments on the designated dates; and
        ii. Timely and fully pay settlements of Client Debts negotiated by NCP and approved by Client.

Initial: _RPL_/____

DigiSigner Document ID: 224559d7-35f5-4784-adb4-5d91834b6d12



# NCP Letter of Engagement

### 13. Additional Terms

I understand that if I take any actions that materially impede NCP 's ability to settle and/or restructure my Enrolled Debt, including but not limited to: taking out other loans, merchant cash advances, lines of credit, or similar advances during the time I am in the NCP Program or misrepresenting My financial situation or ability to pay Client creditors, NCP reserves the right to charge Client the agreed upon Service Fee of the Enrolled Debt and/or to terminate Client enrollment in the Program. If NCP terminates Clients enrollment in the Program, the entire balance due to NCP, will become immediately due and payable, including but not limited to any previously earned Fees that NCP has not billed or that I have not yet paid, and any balance due will be deducted from my reserve account before any refund due (if any) is paid to Client. All Fees earned, billed, and/or collected by NCP are final and nonrefundable. If a creditor payment plan is currently in place, savings reserves will not be returned until after the creditor payment plan has been completed. Any remaining savings reserves will be returned to Client 30 days after creditor's final payment.

### 14. Payment Changes

I understand that after My Enrollment Fees are paid in full, I may be able to reschedule, skip, change, or cancel a scheduled Program Payment if I provide NCP with at least 2 business days advance notice by contacting the NCP office and speaking to a NCP representative. However, I understand that I cannot reschedule, skip, change, or cancel a scheduled payment if I have a Settlement or Restructure in place that is dependent on the scheduled payments being made into Client account. I understand that I will be charged a Payment Plan Change Fee of $75.00 for rescheduling, skipping, changing, or canceling any scheduled Program Payment.

### 15. Returned Payments

If any payments are returned unpaid for any reason, I understand that I will be charged a Return Payment Fee of $150.00 per incident in addition to any third party fees/costs incurred as a result of the returned payment.

### 16. Unpaid Fees

If fees are due and owing to NCP and I have not arranged acceptable repayment terms directly with NCP, I authorize NCP to offset and collect those fees directly from my reserve. This offset and collection is in addition to all other remedies set forth in this Agreement, any other agreements or writings between Client and NCP, and all other remedies allowed by law.

Initial: *RRA*

DigiSigner Document ID: 224559d7-35f5-4784-adb4-5d91834b6d12



# NCP Letter of Engagement

17. Authorizations

    Client authorizes NCP to:
    a. Disclose information regarding Client's financial condition or status to any creditor or collector regarding the debt restructuring plan. Further, NCP may obtain information concerning Client from such creditors
    b. Disclose to creditors and collectors that NCP and its representatives or subcontractors are authorized to negotiate debt restructuring terms on behalf of Client; and to negotiate and modify the unsecured business debt listed in the Creditor Listing Form of this Agreement.

18. Acknowledgements, Disclosures & Disclaimers

    a. Client agrees that:
        i. Apart from the terms of the NCP Performance Standard, there is no guarantee that any or all of Client's debts will be resolved; the outcome of NCP's negotiation of any specified account entered by Client into the debt restructuring program may vary based on a number of factors, including client's ongoing ability to make timely deposits to their Dedicated Account, the willingness of your creditors to negotiate settlements of your debt, and other factors that are outside our control.
        ii. Enrollment in NCP's debt restructuring program may not prevent creditor or collection agency phone calls to Client; however, NCP will take steps to attempt to protect you from harassment from creditors or collection agencies if you timely notify NCP of such harassment.
        iii. The discharge of indebtedness may be considered a taxable event. Client should consult a tax professional to determine any tax obligations they may have as a result of any settlements negotiated on their behalf.
        iv. Client may continue to incur late fees and penalties on the enrolled accounts.
        v. Client's participation in the program will likely have an adverse effect on Client's and business credit score.
        vi. All enrolled accounts consist of unsecured business debts.
        vii. Services rendered include and are related to client's creditors. All email correspondence with creditors, phone calls, fax transmittals, voice messages, direct mails to creditors and internal processing.
        viii. NCP reserves the right to cancel client if clients misses two consecutive payments or a total of four program payments within the terms agreed by Client.
        ix. NCP has <u>not</u> instructed Client to stop making payments to any creditors. Stopping payment(s) on Scheduled Debt(s) may cause Client's creditor(s) to place liens or file a law suit or enter a Confession of Judgment against Client.

Initial: *RPL*/\_\_\_\_\_

DigiSigner Document ID: 224559d7-35f5-4784-adb4-5d91834b6d12



# NCP Letter of Engagement

### 19. Voluntary Participation

Client understands that participation in NCP's program is voluntary and Client may, upon written request, cancel NCP's services at any time prior to the original estimated conclusion date of the program. Client also acknowledges and agrees that:

   a. In the event of any early termination of this Agreement, all Service Costs, Legal Administration Fees, Banking Fees, and Other Fees shall be considered earned and are non-refundable.
   b. Client will pay 10% of the enrolled fee amount to NCP if Client cancels within the first 60 days. The fees will be considered earned.
   c. Early termination may prevent NCP from providing all services outlined herein, and NCP will not be responsible for any unresolved accounts upon cancellation.

### 20. Confidentiality of Client Information

NCP agrees that any information provided by Client will be kept confidential and only be used in providing the services delineated in this Agreement, which may include, among other things, disclosure of confidential information to appropriate third parties to streamline the negotiation process and enhance the Client's opportunities for settlement or modification offers with the Client's various creditors, and to generally improve Client's financial hardship and wellbeing. The Client agrees and acknowledges that such disclosures will be made with the express consent of the Client and will not require any additional consent or consultation by the Client before such disclosures are made.

### 21. Arbitration of Disputes and Waiver of Class Action Rights

In the event of any controversy, claim, or dispute between the Parties arising out of or relating to this agreement or the breach, termination, enforcement, performance, interpretation, or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in the county in which the Client, in accordance with the laws of the state of the Client's residence. The arbitrator shall be neutral and independent and shall comply with the relevant code of ethics. Any award rendered by the arbitrator shall be final and shall not be subject to vacation or modification. Judgment on the award made by the arbitrator may be entered in any court having jurisdiction over the Parties. If either Party fails to comply with the arbitrator's award, the injured Party may petition the applicable court for enforcement.

The Parties agree that either Party may bring claims against the other only in his/her or its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. Further, the Parties agree that the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of representative or class proceeding.

Initial: _____/_____



# NCP Letter of Engagement

**Binding arbitration means that both Parties give up the right to a trial by a jury and their rights to have a dispute resolved in a court of law. It also means that both Parties give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can or may be appealed. It also means that discovery may be severely limited by the arbitrator. In addition, under the terms of this Agreement, the parties also give up the right to bring any claims on a consolidated or class action basis. In addition, certain remedies, such as statutory injunctions and fee shifting, that may be available in a court of law may not be available in arbitration.**

In the event a Party brings suit against the other Party in federal, state or local court instead of proceeding with arbitration, or unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other Party is entitled to costs of suit, including reasonable attorneys' and paralegals' fee and costs for having to compel arbitration or defend or enforce the award. This section and the requirement to arbitrate any dispute shall survive any termination.

22. Governing Law. Forum Selection. Severability

This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to the conflict of law principles thereof. Each of the Parties irrevocably submits to the jurisdiction of any state or federal court located in Orange County, California, over any action, suit or proceeding to enforce or defend any right under this Agreement or otherwise arising from any transaction existing in connection with this Agreement. If any provision of this Agreement is found to be invalid, such invalidity shall not affect any other provision of this Agreement.

Initial: *RPL/*



# NCP Letter of Engagement

I represent that I have read, understand, and agree to be bound by the terms of this Letter of Engagement as set forth above and in the documents incorporated in this Agreement. I further acknowledge that the terms and conditions of this Agreement have been explained to my satisfaction by a representative of NCP and that I have no unanswered questions about the program or this Agreement. I confirm that I agree to arbitrate any claims and to waive any right to bring or participate in a class action against NCP.

Agreed to this NaN day of January , 20 N

Client Name: RPL Real Estate LLC          Date: _____

Client Signature: *Robert Letakus*        Date: 01/18/2019

Co-Client Name: RPL Real Estate LLC       Date: _____

Co-Client Signature: _____          Date: _____

Signature of NCP: *Kim Vo*

Initial RPL / ____

Page 12



# NCP Letter of Engagement

## Notice of Right to Cancel

Date of Transaction: 1/17/2019

You may CANCEL this transaction, without Penalty or Obligation, including any agreements you signed with NCP for up to FIVE BUSINESS DAYS from the above date. If you cancel, you will not be obligated to make any payments to the debt restructuring Firm and any agreements or other documents that you signed will be null and void. To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice to the address below not later than midnight of
_____ (five business days after the Date of Transaction).

I HEREBY CANCEL THIS TRANSACTION.

Date:_____

Client Name: _____    Date: _____

Client Signature: _____    Date: _____

Co-Client Name: _____    Date: _____

Co-Client Signature: _____    Date: _____

(Only fill this section if you decide to cancel this transaction within five business days of the Date of Transaction shown above.)

**NCP**
Fax to 714-784-7821 or Mail Original to:
1551 N. Tustin Ave, Suite 190, Santa Ana, CA 92705

Initial: *RPL*/_____

DigiSigner Document ID: 224559d7-35f5-4784-adb4-5d91834b6d12



# NCP Letter of Engagement

Debt Restructuring

Debt restructuring is a process where the debt restructuring Firm, based on your specific circumstances, develops a plan to manage your debt restructuring with your creditors. In general terms, it is a process of negotiating with your creditors for a lower balance or forgiveness of debt, a reduced interest rate, a reduced monthly payment, or other restructuring alternatives. To be successful in debt restructuring, you need to have sufficient cash flow to meet your business expenses each month and provide some funds towards resolution of your debt.

If appropriate for your situation, NCP will contact your unsecured business creditors in writing to notify them that you are represented by the debt restructuring Firm and that we are advising you as to all alternatives for debt restructuring. As you have indicated in your compliance review, you prefer NCP to attempt debt restructuring as an alternative to bankruptcy or other options. However, if your financial circumstances change, we will advise you as to other debt restructuring alternatives, so you can make an informed decision based on our advice.

If you have any questions regarding the above options, please contact us for further explanation. If you are ready to proceed, sign below your acknowledgement that you have reviewed the available debt restructuring options and have determined that debt restructuring by NCP is your preference, subject to your ability to request a different alternative if your circumstances change in the future.

**I have reviewed and elect to pursue debt restructuring services with NCP.**

Client Name: RPL Real Estate LLC            Date: _____

Client Signature: *Robert Letskus*           Date: 01/18/2019

Co-Client Name: RPL Real Estate LLC          Date: _____

Co-Client Signature: _____          Date: _____

Initial: *RPL* / _____

DigiSigner Document ID: 224559d7-35f5-4784-adb4-5d91834b6d12

# NCP Letter of Engagement

## POWER OF ATTORNEY

I/We, _____

Located at _____

In the City of _____,

State_____, Zip_____

hereby appoint the NCP ("NCP") as my/our Limited Power of Attorney to do the acts described in this Power of Attorney. NCP (and/or its designees) is hereby authorized to act as my/our Limited Power of Attorney and to fully represent me/us in any negotiation of the modification, reduction, settlement, and payment on any and all debts allegedly due and owing in my/our name. I/We authorize NCP to request and receive confidential credit and account information from creditors, credit bureaus, collection agencies, creditor attorneys, or any other third parties who may be in possession of such information and would be viewed by me/us personally.

This Power of Attorney revokes all earlier Power of Attorney given by, or on behalf of, me/us relating to all communications of creditors' claims and shall be effective and binding on me/us until revoked by an instrument in writing executed by me/us. I/We further authorize NCP to release a copy of this Power of Attorney to my/our creditors or their agents. A copy of this Power of Attorney shall be deemed as effective as an original.

Executed on:_____

Client Signature:_____Social Security Number:_____

State of_____
County of_____
The foregoing instrument was acknowledged by me this_____day of_____, 20____
by: _____ this is/ are personally known by me or who
has/ have produced:_____ as identification and who did not take an oath
_____
Notary Public

Initial:*RPL*/_____



# NCP Letter of Engagement

## Settlement and Modification Pre-Authorization Form

NCP shall make all reasonable efforts* to obtain Client's approval for any settlement or modification offer obtained on Client's behalf. In the event NCP cannot contact Client after making reasonable efforts, Client authorizes NCP to proceed with any settlement resulting in a savings of at least 40% on the Client's enrolled debt or a better than 50% payment reduction on their monthly payment. NCP shall make all reasonable efforts to obtain Clients approval for any modification offer obtained on Clients behalf.

Client agrees to the following:

- Total Enrolled Dollar Amount: $ 166,616.41
- Initial Deposit of $ 7,784.05
- First Payment of $
- ACH Payment are drafted $5,784.05
- Payment Terms in Months: 8

*Reasonable efforts can include phone call(s), email(s), fax(es), and standard mail.

Client Name: RPL Real Estate LLC

Client Signature: *Robert Letskus*   Date: 01/18/2019

Co-Client Name: RPL Real Estate LLC   Date:

Co-Client Signature: _____   Date:

Initial: _____ / _____