## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

_____

| | | |
|---|---|---|
| ROBERT LETSKUS, JR., | : | CIVIL ACTION NO.: |
| | : | 3:20-cv-01893-CSH |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| KVC GROUP, LLC d/b/a NATIONAL | : | APRIL 28, 2021 |
| CREDIT PARTNERS, PRIME LEGAL | : | |
| FIRM, DENISE HO and KIM VO, | : | |
| | : | |
| Defendants. | : | |

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
## OR TRANSFER VENUE

Without otherwise submitting themselves or consenting to the jurisdiction of this Court or admitting that venue is proper in this Court, Defendants, collectively and individually, have moved to dismiss this action based on failure to state a claim upon which relief can be granted, violation of the Court's RICO Standing Order, improper venue or, in the alternative, to transfer this action to the United States District Court for the Central District of California, Santa Ana Division. Based on the forgoing memorandum, this motion should be granted.

### I.     Relevant Factual Background and Procedural History

Defendant KVC Group LLC doing business as National Credit Partners ("Defendant KVC") is a business debt relief company with its principal place of business in California. Defendant KVC only operation is to help businesses modify and restructure their business debts with their lenders. Defendant KVC does not engage in consumer debts.

Plaintiff communicated with several personnel from Defendant KVC expressing an interest in retaining Defendant KVC's services.

Specifically, on January 18, 2019 Plaintiff executed a Letter of Engagement agreement ("LOE contract"). The LOE contract contains an arbitration clause and governing law and forum-selection clause wherein in consideration for the arbitration to be conducted in the Plaintiff's county of residence, any suits or proceeding shall in federal or state court shall be brought in Orange County, California.

On or around June 2019, KVC Group initiated arbitration in Connecticut against RPL Real Estate, LLC for breach of contract. Defendant KVC Group was represented by a local counsel in Connecticut in the matter.

On January 2, 2020, the arbitrator issued an award in favor of KVC Group in the amount of $25,071.20, plus cost and fees for having to enforce the award.

Letskus refused to comply with the Arbitrator's Award. As a result, on February 2, 2020, KVC Group by and through its counsel, Defendant Denise Ho ("Defendant Ho") and Defendant Prime Legal Firm ("Defendant PLF") filed a Petition to Confirm Contractual Arbitration Award in Superior Court of California, County of Orange, case number: 30-2020-01129339-CU-PA-CJC, KVC Group LLC vs. RPL Real Estate, LLC, et. al. ("California state court lawsuit"). The lawsuit named both RPL Real Estate, LLC and Robert Letskus as the Respondents. Said lawsuit was solely to enforce the Arbitrator's Award and it was not intended to relitigate the breach of contract cause of action.

Defendant Ho is a California only licensed attorney and Defendant PLF is a law firm based in California.

Defendant Ho and PLC were hired by Defendant KVC to represent it in its effort to enforce and collect on the arbitration's award. Prior to this, Defendant Ho and PLF were not involved in any communication directly, indirectly, or personally with Plaintiff regarding the LOE contract, other than a demand for

payment regarding the arbitrator's award. Any communication from Defendant Ho and PLF had been directed to Mr. Dennis Graff, the Plaintiff's legal counsel in the California state court lawsuit.

On August 7, 2020, the California court granted in part and denied in party Defendant KVC's Petition to Confirm Contractual Arbitration Award. Specifically, the California court confirmed the petition as to Respondent RPL Real Estate LLC and dismissed Respondent Robert Letskus Jr. on the ground he was not identified as a party to the arbitration in the Award at issue, and no other basis for having named him as a Respondent under C.C.P. § 1287.2. The California court did not rule on the issue of breach of contract as it pertains to Robert Letskus Jr. as the California state lawsuit was not about breach of contract, but to confirm arbitration award.

While Defendant KVC by and through its attorney Defendant Ho and PFL have filed several lawsuits in the Superior Court of California, County of Orange for breach of contract, none are exactly similar to case number: 30-2020-01129339-CU-PA-CJC, KVC Group LLC vs. RPL Real Estate, LLC, et. al. The California state court lawsuit naming Plaintiff as the Respondent is the only Petition to Confirm Arbitration Award.

Plaintiff initiated this lawsuit in Connecticut on December 21, 2020 and served all the Defendants on December 28, 2020. On January 13, 2021, Plaintiff filed an Amended Complaint and served Defendants with a copy via electronic mail. On April 20, 2021, Plaintiff filed a Second Amended Complaint. To date, Plaintiff has failed to timely file and serve the RICO Case Statement to Defendants as required by the Court's Standing Order in RICO cases. This statement must be filed within 20 days of the filing of the Complaint. Plaintiff has never sought or obtained an extension of this deadline, but has suggested that he will file the required statement on May 9, 2021.

## II.    Legal Argument and Citations of Authority

## A.    Improper Venue - The Mandatory Forum-selection Clause Requires Dismissal

Fed. R. Civ. P. 12(b)(3) authorizes a motion to dismiss based on improper venue. *Mak Marketing, Inc. v. Kalapos*, 620 F. Supp. 2d 295 (D. Conn. 2009). In considering a motion to dismiss for improper venue based on a contractual forum selection clause, "[t]he Second Circuit simply requires that, 'where one party has shown an apparently governing forum-selection clause, the party opposing litigation in the so designated forum must make a strong showing to defeat that contractual commitment.'" *Id*. (*quoting Asoma Corp. v. SK Shipping Co.*, *Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006).

"Determining whether to dismiss a claim based on a forum-selection clause involves a four-party analysis." *Mak Marketing, Inc.,* 620 F. Supp. 2d at 300 (*citing Phillips v. Audio Active*, *Ltd.*, 494 F.3d 378, 383-384 (2d Cir. 2007)). "The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement." *Id*.  (*citing "D.H. Blair Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). "The second inquiry is whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum or simply permitted to do so." *Id*. at 300-01 (*citing John Boutari Son, Wines Spirits, S.A. v. Attiki Imps. Distribs. Inc*., 22 F.3d 51, 53 (2d Cir. 1994). "The third inquiry asks whether the claims and parties involved in the suit are subject to the forum-selection clause." *Id*. at 301 (*citing Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1358-61 (2d Cir. 1993)

"If the first three inquiries are satisfied, . . . the forum-selection clause is presumptively enforceable." *Id*. (*citing Roby,* 996 F.2d at 1362-63). "The fourth and final inquiry . . . is whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be

unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreacting." *Id*. (internal quotation and citation omitted).

Here, it is undisputed the LOE contract alleged in Plaintiff's complaint contains a forum selection clause. [Dkt No. 1, Exh 1]. Specifically, Section 22, page 11 of the LOE contract under the bolded label "Governing Law. Forum Selection. Severability." *Id*. Because of the existence of the forum-selection clause, the critical question becomes whether the forum selection clause is enforceable. Where a forum selection clause is unenforceable or otherwise not applicable, a court is to engage in the standard transfer analysis and consider the parties' private interests and other public interest factors. *See Atl. Marine*, 134 S. Ct. at 581 n.6 (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). A valid forum selection clause alters this analysis by precluding the court from giving weight to the plaintiff's choice of forum and from considering the parties' private interests; a court must instead consider only arguments about public-interest SACtors. *Id.* at 583. A court is also bound by the choice of law provision "[i]n all but the most unusual circumstances." *Id.*; *see Charter Oak Oil Co., Inc. v. Applied Underwriters, Inc.*, No. 17-cv-00689, slip op. at 1 (D. Conn. 2017) (*citing Atl. Marine*, 134 S. Ct. at 581-82).

A forum selection clause is enforceable if it satisfies the Second Circuit's four-part test. A court must ask:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any [ ] dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable

or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Martinez*, 740 F.3d at 217 (internal quotation marks and citations omitted); *see Charter Oak*, slip op. at 5 (applying this four factor test "[t]o determine whether a forum selection clause is enforceable"); *United States ex rel. QSR Steel Corp., LLC v. Safeco Ins. Co. of Am.*, No. 3:14-cv-1017 (VAB), 2015 WL 4393576, at *6 (D.Conn. July 16, 2015) (same); *Compuweigh Corp. v. Honeywell Int'l, Inc.*, No. 3:16-cv-01108 (VAB), slip op. at 3 (D. Conn. Dec. 9, 2016) (same).

With respect to the first inquiry, the forum-selection clause was "reasonably communicated" to the Plaintiff. A forum selection clause is "reasonably communicated" when the "physical characteristics" evince the important terms and the circumstances present in effectuating the contract enabled the parties to "become meaningfully informed of the contractual terms at stake." *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523 (2d Cir. 2001) (adopting the rule for a passenger's ticket on a cruise); *see United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 225 (D. Conn. 2003) (applying the two-part test in a contract dispute over an employment agreement); *FSB USA, Inc. v. Am. Prods. Prod. Co. of Pinellas Cnty., Inc.*, No. 3–08–cv–1758 (JCH), 2009 WL 2762744, at *4 (D. Conn. Aug. 24, 2009) (utilizing the two-part test for a purchase and sale contract dispute between two companies); *see also Compuweigh Corp.*, slip op. at 3 (acknowledging a party need not have read the provision so long as the physical characteristics reasonably communicate the clause and the circumstances enable the party to be meaningfully informed of the terms).

The physical characteristics of the forum selection clause are unchallenged and do not undermine the clarity with which these terms were effectively communicated. "Courts have . . . considered the inclusion of a forum selection clause within the main text of a contractual agreement to support a finding that the forum selection clause was reasonably communicated." *Compuweigh Corp.*, slip

op. at *3 (collecting cases); *c.f. FSB USA, Inc.*, 2009 WL 2762744, at *4 (finding forum selection clause was not reasonably communicated where "FSB was required to affirmatively ask API for a separate copy of the Terms in order to become aware of the forum selection clause," and API's failure to do so meant it did not adequately "ensure [ ] that the terms were reasonably communicated").

Here, the physical characteristics of the LOE contract make clear the important terms of the forum selection clause as it is set forth in a separate section, specifically section 22 with bolded labeling "Governing Law. Forum Selection. [Dkt No. 1, Exh 1]. Moreover, and most importantly, the signature part is immediately right after the forum-selection clause – this alone shows that the forum-selection clause is not hidden or imbedded in middle of the sixteen pages LOE contract. *Id*. The placement of the forum-selection clause right before the signatures of the parties was to not only signify the importance of the forum-selection clause, but also to inform the Plaintiff the significance of agreeing and signing the LOE contract. *See Horvath v. Banco Comercial Portugues, S.A.*, No. 10 Civ. 4697 (GBD), 2011 WL 666410 at *4 (S.D.N.Y. Feb. 15, 2011), *aff'd* 461 F. App'x 61 (2d Cir. 2012) ("[A] person who signs a contract is presumed to know its terms and consents to be bound."); *see also FSB USA, Inc.*, 2009 WL 2762744, at *4 (*quoting Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11 (2d Cir. 1968) (the court explained as long as a party does "all it reasonably could" to warn a party of an important matter in a contract affecting legal rights, a forum selection clause can be considered "reasonably communicated."). The clause was typed in the body of the contract in the same font as the other terms. Therefore, the forum-selection clause in the LOE contract is reasonably communicated to the parties.

With respect to the second inquiry, the forum-selection clause is mandatory, not permissive because it expressly uses the words "irrevocably submits to the jurisdiction of any state or federal court located in Orange County, California".

[Dkt No. 1, Exh 1]. Moreover, the language in the forum-selection clause does not provide an option for the parties to bring suit or proceeding anywhere else outside of Orange County, California.

With respect to the third inquiry, the parties and all of the claims in this action are subject to the LOE contract's forum-selection clause. Section 22 of the LOE contract states, in pertinent part and with emphases added, as follows:

> "*This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to the conflict of law principles thereof. Each of the Parties* **irrevocably submits to the jurisdiction of any state or federal court located in Orange County, California, over any action, suit or proceeding to enforce or defend any right under this Agreement or otherwise arising from any transaction existing in connection with this Agreement***. If any provision of this Agreement is found to be invalid, such invalidity shall not affect any other provision of this Agreement.*" *Id*.

Plaintiff asserts five causes of action in the Second Amended Complaint: (1) Fraud; (2) Violation of the Connecticut Unfair Trade Practices Act ("CUPTA"); (3) Negligent Misrepresentation; (4) RICO violation; and (5) Vexatious Litigation. Every one of Plaintiff's claim in this action either arises directly out of or relates to the LOE contract. In fact, the LOE contract is the core foundation upon which Plaintiff's claims relies on.

Moreover, there is no distinction articulated in the LOE contract as to the types of actions to which forum selection clause applies. In fact, the wording in the forum-selection clause reflects an understanding that all disputes arising or relating in any way to the LOE contract between the parties must be resolved in accordance with the provisions of the forum-selection clause.

Because the first three inquires of the analysis have been satisfied, the LOE contract's forum-selection clause is presumptively enforceable. As such, the

burden shifts over to the Plaintiff to show enforceability of the forum-selection clause would be unreasonable and unjust with respect to the fourth inquiry. At the fourth step, an otherwise valid forum selection clause will be enforced unless "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff will effectively be deprived of his day in court." *Martinez*, 740 F.3d at 227 (internal quotation marks and citations omitted). In making a showing under any of these circumstances, Plaintiff bears a "heavy burden." *Id.* at 219.

Here, Plaintiff cannot satisfy its "heavy burden" to rebut the presumption of enforceability of showing that enforcing the forum-selection clause would be unreasonable or unjust or that the clause fails due to fraud or overreaching. Not only did Plaintiff agree to the forum-selection clause, but the Plaintiff has also not alleged and cannot show that the LOE contract was anything other than the product of arm's-length negotiation between two sophisticated parties to define all of the terms of their business relationship. The forum-selection clause was clear, unambiguous, conspicuous, and part of a detailed contact, the terms of which Plaintiff agreed to. As a result, Plaintiff cannot overcome the presumption of enforceability.

Therefore, the forum-selection clause determines that this Court is not the proper venue under Fed. R. Civ. P. 12(b)(3). Accordingly, this Court should dismiss this action.

**B.** **In the Alternative, This Action Should Be Transferred**

Even if the Court does not dismiss this action for being filed in an improper venue, this Court can and should transfer this action to the United States District Court for the Central District of California, Santa Ana Division per the parties' forum selection clause and for the convenience of the parties and witnesses.

"For the convenience of parties and witnesses, in the interest of justice, **a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."** 28 U.S.C. § 1404(a). "Section 1404(a) reposes considerable discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Mak Marketing, Inc.*, 620 F. Supp. 2d at 298 (*citing Red Bull Associates v. Best Western Int'l*, 862 F.2d 963, 967 (2d Cir. 1988). "Although not dispositive, . . .'[t]he presence of a forum-selection clause . . . will be significant factors that figures certainly in the district court's calculus [in deciding whether to transfer].'" *O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98, 103 (D. Conn. 1998) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). However, if a district court finds the forum-selection clause to be enforceable, the district court may not consider the plaintiff's choice of forum or arguments concerning the parties' private interests. *Atl. Marine*, 134 S. Ct. at 581-82; *Charter Oak*, slip op. at 1; *Compuweigh Corp.*, slip op. at 6. A court may, however, consider public-interest factors such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 134 S. Ct. at 582 n.6. "Because those factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual circumstances." *Id.* at 582. The forum selection clause's choice of law provision is to control absent unusual circumstances. *Id.* at 583; *Charter Oak*, slip op. at 7.

Here, the forum-selection clause in the LOE contract weighs heavily in favor of transferring this case to the venue that the parties chose for any disputes. Moreover, this matter alleges wrongdoing by agents of Defendants – necessary witnesses – that reside in the State of California. In addition, the harm alleged in

the Plaintiff's complaint occurred in California. Plaintiff will be required to obtain evidence from Defendants and its agent throughout the course of this case, which will necessitate discovery done in California. Therefore, the interests of justice weigh in favor of this case proceeding in California where the majority of the discovery will originate.

Further, this case must be decided under California law as discussed below. A District Court in California will be far more familiar with California law than this Court will be.

**C.**   **Failure To State A Claim Upon Which Relief Can Be Granted**

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (citations omitted). When deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

Here, Plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6) because California, and not Connecticut law applies in this case. Plaintiff erroneously brings a claim under Connecticut law when, in fact, California law controls and is the governing law under the "Governing Law. Forum Selection" and the Restatement (Second) of the Conflict of Laws ("Restatement"). *See Western Dermatology Consultants, P.C. v. Vital Works, Inc.,* 322 Conn. 541, 580 (2016).

As referenced and stated above, "Governing Law. Forum Selection" provision of the LOE contract expressly dictate that "laws of the State of California" shall governed the any action or suits arising or in connection with the

LOE contract. [Dkt No. 1, Exh 1]. Just as Plaintiff cannot satisfy his heavy burden to rebut the presumption of enforceability of showing that enforcing the "Governing Law. Forum Selection" clause would be unreasonable or unjust, here the parties agreed that California law controls and governs the dispute between the parties arising or in connection with the LOE contract. See *Horvath v. Banco Comercial Portugues, S.A.*, No. 10 Civ. 4697 (GBD), 2011 WL 666410 at *4 (S.D.N.Y. Feb. 15, 2011), *aff'd* 461 F. App'x 61 (2d Cir. 2012) (reasoning that Implied in enforcing any contract is the principle that "a person who signs a contract is presumed to know its terms and consents to be bound.").

Moreover, California law is controlling under the Restatement (Second) of the Conflict of Laws ("Restatement") to which Connecticut applies to substantive choice of law questions. Because California law applies and the counts in Plaintiff's First Amended Complaint is brought under Connecticut law, Plaintiff has failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), therefore, should be dismissed. *Western Dermatology Consultants, P.C. v. Vital Works, Inc.,* 322 Conn. at 563-64.

Under the Restatement, the law of the state that has the most significant relationship to the occurrences and the parties applies. *See* Restatement (Second) of the Conflict of Laws, § 145 (1971). Contacts to consider in this analysis include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties centered." *Id*. Furthermore, "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id*.

Here, according to the Second Amended Complaint, the alleged injury or harm to Plaintiff and the conduct causing the harm to Plaintiff occurred in California. Plaintiff alleges he was personally named as a respondent in the

Petition to Confirm Arbitration award that was filed in the Superior Court of California, County of Orange despite the LOE contract did not contain a personal guaranty holding Plaintiff personally liable. [SAC, ¶ 20] Plaintiff claimed he was personally harmed by being named in the California state court when Defendants have no ground to named Plaintiff in the suit. Plaintiff alleges that such action by Defendants was fraudulent and vexatious in nature. *Id*. at ¶¶ 20-24. Lastly, all the alleged fourteen cases that Plaintiff claimed to be vexatious litigation are all in California. *Id*. ¶ 25.

Although Plaintiff is a citizen and residence of Connecticut, all the Defendants to this action are citizens of California with principal place of business only in California. The LOE contract was entered in California and the services under the LOE contract were performed in California. The relationship between Plaintiff and the Defendants arises solely out of the incident that occurred in California – by naming Plaintiff in the California state suit.

California is where the alleged incident arose to which Plaintiff claimed caused him harm, all the evidence are in California, and the majority of the witnesses are located in California. Therefore, taking all the factors into consideration, California has the most significant relationship to the alleged incident and California law should apply.

## D. <u>Plaintiff's Complaint Should Be Dismissed For Failure To State A Claim Under California Law</u>

### Count I – Fraud

California law defines fraud as "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." *California Civil Code* §1709. "'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

"scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638. To maintain any fraud action, a plaintiff must show that he or she changed position in reliance upon the alleged fraud and was damaged by that change of position (*Civ. Code*, § 1709).

Here, the fraud claim against Defendant KVC fails because SAC alleges that the "false statement of facts . . . were known to be untrue when made by Defendant KVC. [SAC, ¶ 33]. The SAC alleges that representation was made by Mr. Haim and Mr. Justin Smith to Plaintiff that Plaintiff would not be personally liable. [SAC, ¶ 10-12]. However, nowhere in the SAC, it alleges facts to show intent from Defendant KVC or its agents that statements were made with the intent to deceive Plaintiff or the statements were known to be untrue by Defendant KVC or its agents at the time they were made.

In addition, Plaintiff alleges in the SAC that Defendant KVC "made multiple statements of facts … as specifically alleged in Paragraph 11-16 herein." [SAC, ¶ 33]. This means that the statement about any "dispute it would be litigated in the county where RPL is located, which is in Connecticut" is also false. [*Id*. ¶ 12]. However, the dispute that arose between RPL and Defendant KVC around mid-2019 was in fact litigated in Connecticut. Defendant KVC demanded for arbitration on June 14, 2019, Connecticut. *See* Declaration of Emmie Mackey. This alone show that the statement made by Defendant KVC about litigation in RPL's county of residence was not false.

As a result, Plaintiff's fraud claim fails to state a claim under California law, and should be dismissed.

Without otherwise consenting that Connecticut law applies, for argument's sake, Plaintiff's fraud claim even fails under Connecticut law. To state a common law fraud claim under Connecticut law, a plaintiff must allege facts in support of the following: "'(1) a false representation was made [by the defendant] as a

statement of fact; (2) the statement was untrue and known to be so by [the defendant]; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment.'" *Stuart v. Freiberg*, 316 Conn. 809, 821 (2015) (quoting *Nazami v. Patrons Mut. Ins. Co*., 280 Conn. 619, 628 (2006)) (alterations in original).

Here, Plaintiff fails to specify in his SAC what aspects of Defendant KVC's conduct believes constitutes fraud. Plaintiff base his fraud claim on Defendant KVC's agent or personnel "represented" that the contract would be between RPL only and that Plaintiff is not a party to the contract and there is "personal guaranty by Mr. Letskus." SAC ¶¶11, 14-15, ECF No. 22. Moreover, Plaintiff alleges Defendant KVC misrepresented that any dispute between the RPL and Defendant KVC, "it would be litigated in the county where RPL is located, which is in Connecticut." *Id*. ¶12.

The SAC fails to plead sufficient specific facts to raise a "strong inference" that Defendant KVC committed fraud. *See Ross v. A.H. Robins Co., Inc*., 607 F.2d 545, 558 (2d Cir. 1979). Plaintiff does not allege anywhere in the SAC that Defendant KVC had a motive to commit fraud. Plaintiff also generally fails to allege that Defendant KVC actually knew or had reason to know the statements it made to Plaintiff about "no personal guaranty" or litigation in Connecticut were false. For example, Plaintiff alleges that Defendant KVC represented that contract contains "no personal guaranty," but Plaintiff does not allege that Defendant KVC knew otherwise. Allegations of knowledge or intent are required to state a fraud claim. *See* e.g., *Claude v. Wells Fargo Home Mortg*., CIVIL ACTION NO. 3:13-cv-00535, 2014 U.S. Dist. LEXIS 112493, at 15-16 (D. Conn. Aug. 14, 2014) (granting a motion to dismiss a fraud claim because plaintiff failed to plead specific facts, rather than unsupported conclusions, showing that raised a strong inference of fraud); *see also Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 380 (D. Conn. 2012) ("The mere fact that a party has breached a contract does not create a

strong inference of fraud.") (citation and internal quotation marks omitted). At this stage, virtually Plaintiff's allegations could be consistent with mere negligence or incompetence, rather than fraud. *See e.g.*, *Tatum v. Oberg*, CIVIL ACTION NO. 3:08-CV-1251 (JCH), 2009 U.S. Dist. LEXIS 118347, at 10-11 (D. Conn. Dec. 18, 2009) (deny a motion to amend the complaint with respect to a fraud claim as futile under Rule 12(b)(6) because the allegations more plausibly supported a "professional malpractice claim" as opposed to fraud). Thus, Plaintiff's fraud claim against Defendant KVC fails under Rule 12(b)(6).

**Count II – Violation Of Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.**

Having established that California, and not Connecticut, law applies, Plaintiff's Count II failed to state a claim upon which relief can be granted because said count is under Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. Since Connecticut law is inapplicable, Plaintiff is left without a claim. An analogous case is *Svege v. Mercedes Benz Credit Corp.*, where the court dismissed the case for failure to state a claim based upon similar circumstances. 182 F. Supp. 2d 226 (D. Conn. 2002). There, Defendant KVC moved to dismiss under Fed. R. Civ. P. 12(b)(6) claiming that Pennsylvania law, not Connecticut law, applied, leaving the Connecticut statute (Connecticut's Automobile Rental Statute) under which the suit was brought inapplicable. *Id*. at 228. Because the Connecticut statute was inapplicable, Plaintiff had not asserted a claim upon which relief could be granted. *Id. See also Western Dermatology Consultants, P.C. v. Vital Works, Inc.,* 322 Conn. at 563-64.

**Count III - Negligent Misrepresentation**

"Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit. 'Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.'" (*Bily v. Arthur Young & Co.*, 3

Cal.4th 370, 407 (Cal. 1992) (citing *Witkin*, Summary of Cal. Law (9th ed. 1988) Torts, § 720 at p. 819); *See California Civil Code* § 1710.

"Negligent misrepresentation requires an assertion of fact, falsity of that assertion, and the tortfeasor's lack of reasonable grounds for believing the assertion to be true. It also requires the tortfeasor's intent to induce reliance, justifiable reliance by the person to whom the false assertion of fact was made, and damages to that person. An implied assertion of fact is 'not enough' to support liability." (*SI 59 LLC v. Variel Warner Ventures*, LLC (2018) 29 Cal.App.5th 146, 154 [239 Cal.Rptr.3d 788], internal citation omitted.) The elements of negligent misrepresentation also include justifiable reliance on the representation and resulting damage." (*B.L.M. v. Sabo & Deitsch* (1997) 55 Cal.App.4th 823, 834 [64 Cal.Rptr.2d 335], internal citations omitted.)

Here, the SAC fails to allege facts that Defendant KVC failed to exercise reasonable care in communicating the information to Plaintiff or have no reasonable ground to believe the statements made were false. [SAC, ¶ 43-44]. The SAC alleges facts that statements were made by two individuals at KVC Group LLC but is completely empty of facts showing that Defendant KVC has reasonable ground to believe the statements made at the time to Plaintiff to be false.

Therefore, Plaintiff's negligent misrepresentation fails under California law, and should be dismissed.

### Count V – Vexatious Litigation

Without submitting that Connecticut's law applies, Defendants (KVC, Prime Legal Firm, Denise Ho, and Kim Vo) assert that Plaintiff's vexatious litigation claim must be govern by California law and not Connecticut vexatious statute. *Conn. Gen. Stat*. § 52-568[1].

---

[1] "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages." Conn. Gen. Stat. § 52-568.

In *Shaeffer v. O.K. Tool Co*., 110 Conn. 528 (1930), the Connecticut Supreme Court considered whether Connecticut law applied to a common law claim for vexatious litigation arising out of an action brought in New York. The Connecticut Supreme Court concluded that New York law applied to the action. *Id*. at 333. The court reasoned: "Since the tort, if any, was committed in the state of New York, the existence of the cause of action, as well as the measure of damages, is to be determined by the law of that state." *Id*. Relying on *Shaeffer*, at least one court in this District has concluded that a claim for relief under Section 52-568 must be based on a cause of action or complaint commenced and prosecuted in Connecticut. *Hydro Air of Conn*., *Inc*. *v. Versa Techs*., *Inc*., 99 F.R.D. 111, 112 (D. Conn. 1983) (disallowing counterclaim under Section 52-568 where underlying suit was brought in New Jersey); *see also Gilbert v. Zivtech, LLC*, No. CV17-6074279-S, 2018 WL 3715572, at *7-*8 (Conn. Super. Ct. July 5, 2018) (concluding based on *Shaeffer* that vexatious litigation claim arising out of lawsuit filed in Pennsylvania did not satisfy the tort-prong of Connecticut's long-arm statute because "the alleged tort took place, if at all, in Pennsylvania").

The SAC premises the vexatious litigation claim against all Defendants on the civil actions filed in California state court. [SAC ¶¶ 25-26]. Moreover, the Petition to Confirm Arbitration Award naming RPL and Plaintiff was brought and prosecuted in California. [*Id*. at ¶ 20]. Based on this, Plaintiff's vexatious litigation claim should be governed by California law and not Connecticut vexatious statute.

Under California law, Plaintiff's vexatious litigation claim fails to state a claim. California's vexatious litigant law, *Cal. Civ. Proc. Code* §§ 391–391.8, was "designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants." *Shalant v. Girardi*, 51 Cal.4th 1164, 1169 (Cal. 2011). The statute "provide[s] courts and

nonvexatious litigants with two distinct and complementary sets of remedies." *Id*. at 270.

The statute defines "vexatious litigant" to mean "a person who does any of the following:

> (1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing.
> (2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.
> (3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.
> (4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence.

*Cal. Code Civ. Proc*. § 391(b). "Litigation" means "any civil action or proceeding, commenced, maintained or pending in any state or federal court." *Cal. Code Civ. Proc*. § 391(a). A plaintiff is "the person who commences, institutes or maintains a litigation or causes it to be commenced, instituted or maintained, including an attorney at law acting in propria persona." *Cal. Code Civ. Proc*. § 391(d).

The statute does not define "in propria persona," but the phrase means "in one's own person." *Black's Law Dictionary* (10th ed. 2014). If the definition of "in

propria persona" is given any meaning at all, it must be that an attorney proceeding on his behalf can be a plaintiff subject to the vexatious litigant law.

Conversely, the "vexatious litigant" law does not cover a person represented by an attorney. Instead, as discussed above, the law covers only a person who is "acting in propria persona." *Cal. Civ. Proc. Code* § 391(d). A person acting through an attorney is not acting on her own behalf, or in propria persona, and would not be covered by the statute. *See John v. Superior Court*, 63 Cal. 4th 91 (2016) ("The vexatious litigant statutory scheme applies exclusively to self-represented litigants.") (internal citation omitted); *see also Shalant*, 51 Cal. 4th at 1169 (previously-declared vexatious litigant not subject to pre-filing review when represented by counsel in filing new litigation).

Similarly, the law does not cover an attorney representing a client. An attorney representing another person is by definition not representing himself, and is thus not "acting in propria persona" and would not be subject to a vexatious litigant order. *See also Weissman*, 179 F.3d at 1194 (in evaluating trial court's vexatious litigant order under 28 U.S.C. § 1651(a), concluding "[a] vexatious litigant order imposed against a pro se litigant, however, is distinguishable from an order that limits an attorney's right to file pleadings on behalf of a client, i.e., to practice his or her profession.").

Here, the SAC alleges that Defendant KVC by and through its attorney Defendant Denise Ho and Defendant PLF filed fourteen exactly similar lawsuits in Superior Court for the State of California, County of Orange as the state lawsuit naming Plaintiff, Defendants are vexatious litigants. However, Plaintiff's claim for vexatious litigation fails under *Cal. Civ. Proc. Code* §§ 391–391.8 because the statute does not cover or define a party represented by an attorney or an attorney representing a party as vexatious litigant. Rather the California vexatious statute made it clear that it only covers a person who is "in propria persona."

Under California vexatious litigants' statute, Plaintiff's claim for vexatious litigation fails as the statute does not cover a party represented by an attorney or an attorney representing another person. Therefore, Plaintiff cannot assert a claim upon which relief could be granted under California vexatious law. Plaintiff's claim should be dismissed with prejudice.

### E.     Violation of RICO Standing Order

Pursuant to the District of Connecticut's Local Rules' Standing Order in Civil RICO Cases, all civil actions where the pleading contains a cause of action pursuant to 18 U.S.C. §§ 1961–1968 ("RICO") the party asserting the RICO claim shall file a RICO Case Statement within twenty (20) days of filing the first pleading asserting the RICO claim.

Here, the Plaintiff violated this Court's RICO Standing Order by failing to file a RICO Case Statement within twenty days of filing the first pleading asserting the RICO claim. Plaintiff's complaint was filed on December 21, 2020, the First Amended Complaint was filed on January 13, 2021.  Thus, the RICO Case Statement was due on February 2, 2021. Plaintiff has never sought or received an extension of this deadline.  Although Defendants raised the absence of the RICO Case Statement in their Motion to Dismiss, Plaintiff still has not filed the RICO Case Statement.

Plaintiff states that he will file a RICO Case Statement by May 9, 2021. Plaintiff should not be allowed to file a RICO Case Statement past Defendants' April 28, 2018 deadline to file their Motion to Dismiss, as the Defendants do not have the benefit of the Statement in preparing their Motion to Dismiss.

### III.   Conclusion

For the foregoing reasons, Defendants respectfully requests that this Court grant their motion to dismiss Plaintiff's First Amended Complaint pursuant to the following grounds:

1. Fed. R. Civ. P. 12(b)(3) for improper venue. In the alternative, transfer the matter to a proper venue under 28 U.S.C. § 1404(a); and

2. Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and violation of the RICO Standing Order.

**KVC GROUP, LLC d/b/a NATIONAL CREDIT PARTNERS, PRIME LEGAL FIRM, DENISE HO and KIM VO**

By:    /s/ *Jeffrey Hellman*
Jeffrey Hellman
Law Offices of Jeffrey Hellman, LLC
195 Church Street, 10th Floor
New Haven, CT  06510
Tel.:  (203) 691-8762
jeff@jeffhellmanlaw.com
Federal Bar No.:  ct04102

## CERTIFICATE OF SERVICE

This is to certify that a copy of the forgoing Memorandum of Law in Support of Motion to Dismiss Plaintiff's Second Amended Complaint or Transfer Venue, the Declaration of Emmie Mackey, and the Declaration of Denise Ho were served by operation of the Court's CM/ECF system on April 28, 2021 to the following:

Michael Andrew Zamat
Peterson Zamat, LLC
1275 Post Road, Suite 200-D
Fairfield, CT 06824
michael@petersonzamat.com

By:     /s/ *Jeffrey Hellman*
        Jeffrey Hellman