IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ROBERT LETSKUS, JR.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:20-cv-01893-CSH** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **KVC GROUP, LLC d/b/a NATIONAL** | ) | |
| **CREDIT PARTNERS, PRIME LEGAL** | ) | |
| **FIRM, DENISE HO and KIM VO,** | ) | |
| | ) | |
| Defendants. | ) | **MAY 26, 2021** |

## OPPOSITION TO MOTION TO DISMISS

The Plaintiff, Robert Letskus, Jr. ("Mr. Letskus") hereby files this opposition to the Motion to Dismiss filed on April 28, 2021 by Defendants KVC Group, LLC d/b/a National Credit Partners ("KVC"), Prime Legal Firm ("Prime Legal"), Denise Ho ("Ms. Ho") and Kim Vo ("Ms. Vo") (collectively, the "Defendants") [dkt. # 23, 24].

## PRELIMINARY STATEMENT

The entire basis of the Defendants' Motion rests on a Letter of Engagement Agreement ("Agreement") entered into between RPL Real Estate, LLC ("RPL") (a non-party to this action) and KVC, which was dated January 18, 2019.  In particular, the Defendants rely on the forum selection clause contained in that Agreement which calls for each party to "irrevocably submit to the jurisdiction of any state or federal court located in Orange County, California, over any action, suit or proceeding to enforce or defend any right under this Agreement or otherwise arising from any transaction existing in connection with this Agreement."  Moreover, the forum selection clause states that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to the conflict of law principles thereof."

1

Looking at the Motion as a boiled down product, it is clear that it is brought *only* on behalf of KVC as there are no bases for dismissal asserted by the remaining Defendants, Prime Legal, Ms. Ho and Ms. Vo. Despite the Defendants' reliance on the Agreement throughout the course of the Motion, it is undisputed that Mr. Letskus, Prime Legal, Ms. Ho and Ms. Vo were *not signatories* to the Agreement. Therefore, the existence of the forum selection clause between RPL, a non-party to these proceedings, and KVC, should in no way act as a barrier to Mr. Letskus' ability to proceed with this lawsuit in the District of Connecticut.

### I.     Improper Venue/Forum Selection Clause

While "[i]t is well established in this Circuit that a non-signatory may enforce a forum selection clause against a signatory where the non-signatory is 'closely related' to a signatory … the Second Circuit has not reached the question of when a signatory may enforce a forum selection clause against a non-signatory." *Prospect Funding Holdings, LLC v. Vinson*, 256 F.Supp. 3d 318, 324 (S.D.N.Y. 2017). That is exactly what the Defendants are attempting to do here. In particular, KVC asserts that Mr. Letskus, a non-signatory to the Agreement, should be bound by the forum selection clause contained therein. Moreover, KVC attempts to bootstrap the remaining defendants, Prime Legal, Ms. Ho and Ms. Vo to the argument that the forum selection clause should apply. The fact is that the *only signatory* to the Agreement is KVC. To enforce a forum selection clause against a non-signatory on behalf of one signatory and three other non-signatories reeks of injustice and should not be permitted.

There is indeed "ample support for the conclusion that the fact that a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. V. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). "Where the alleged conduct of the non-signatories is closely related to the contractual

relationship, a range of transaction participants, parties and nonparties should benefit and be subject to the forum selection clause(s)." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013).

"The case law makes clear that 'closely related' in this sense is a ***fairly strict standard***." *Miller v. Mercuria Energy Trading, Inc*., 291 F. Supp. 39 509, 523 (S.D.N.Y. 2018) (emphasis provided). "This strict standard has some district courts asking whether a non-signatory could reasonably foresee that it would be bound to the clause, and others asking whether the non-signatory's interests are 'completely derivative' of and directly related to, if not predicated upon the signatory party's interests or conduct." *Power Up Lending Grp., Ltd. V. Nugene Int'l., Inc*. No. 17-CV-176601 (SJF) (AKT), 2019 U.S. Dist. LEXIS 5720 at *9-10 (E.D.N.Y. Jan. 10, 2019).

Moreover, "the principle of mutuality, i.e., whether the [defendant] (in this case, Mr. Letskus) would be entitled to enforce the forum selection clause against the [plaintiff] (here, Defendants), is a useful factor in assessing whether the closely-related test is satisfied." *Sawch v. Life Techs Corp*., No. 3:11-CV-1359 (AWT) 2012 U.S. Dist. LEXIS 132858 at *2 (D. Conn. Sep. 18, 2012). One can only speculate as to what KVC would do in the event Mr. Letskus attempted to use the forum selection clause against it. However, in all likelihood, KVC would argue that because Mr. Letskus is not a signatory to the Agreement, he cannot rely on the clause. This falls squarely in line with KVC's aggressive litigation tactics.

Finally, Prime Legal, Ms. Ho and Ms. Vo cannot reasonably latch onto the assertion that the terms of the Agreement apply to them. Mr. Letskus could not reasonably foresee that these three Defendants would be subject to the terms of the Agreement at the time he signed it on behalf of RPL. As stated in Defendants' Motion, Prime Legal, Ms. Ho and Ms. Vo became

involved well *after* the Agreement was signed.  As the Motion states:  "Defendant Ho and PLC were hired by Defendant (KVC) to represent it in its effort to enforce and collect on the arbitration's award.  ***Prior to this, Defendant Ho and PLF were not involved in any communication directly, indirectly, or personally with Plaintiff regarding the LOE contract***, other than a demand for payment regarding the arbitrator's award." *See* Motion, p. 2-3 (emphasis provided).  Defendants do not even discuss Ms. Vo with respect to the terms of the Agreement or the forum selection clause in their Motion (in fact, Ms. Vo is only mentioned once throughout the course of the Motion, namely on page 17 regarding the claim for vexatious litigation).

Because Mr. Letskus, Prime Legal, Ms. Ho and Ms. Vo are not signatories to the Agreement along with the fact that none of these parties are closely related to the contractual relationship, the forum selection clause should not be applicable.  This litigation should thus remain in the District of Connecticut and the laws of Connecticut should apply.

## II. Transfer

This action should not be transferred for the same reasons specified in *Section I* herein. Moreover, pursuant to section 1404(a) of Title 28 of the United States Code, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district of division where it might have been brought." 28 U.S.C. § 1404(a). The movant bears the burden of establishing the propriety of transfer by ***a clear and convincing showing***. *Excelsior Designs v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (*citing Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950)) (emphasis provided); *see also United Rentals v. Pruett*, 296 F. Supp. 2d 220, 228 (D. Conn. 2003) (placing burden on movant despite presence of forum-selection clause); *O'Brien v. Okemo Mountain*, 17 F. Supp. 2d 98, 102 (D. Conn. 1998) (same). "Section 1404(a) reposes considerable discretion in the district court to

4

adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Red Bull Associates v. Best Western Int'l*, 862 F.2d 963, 967 (2d Cir. 1988) (internal citation omitted). In determining whether a transfer of venue pursuant to 28 U.S.C. § 1404(a) is appropriate, district courts engage in a two-part inquiry, asking: (1) whether an action "might have been brought" in the proposed transferee forum, and, if so, (2) whether the transfer promotes convenience and justice. *See MAK Mktg. v. Kalapos*, 620 F. Supp. 2d 295, 307 (D. Conn. 2009); *see also Forjone v. California*, 425 Fed. Appx. 73, 74 (2d Cir. 2011).

While this action could have been brought in California, it was not, because Mr. Letskus resides in Connecticut and because the Defendants are subject to jurisdiction here. Moreover, a transfer of this case to California certainly would not promote convenience and justice. KVC is a company who does business nationally, a fact to show that there would be no inconvenience to it if this lawsuit proceeds in the District of Connecticut. While the remaining Defendants are based in California, the use of e-discovery and video conferencing allow for much more of a streamlined process that would not cause any inconvenience to any party. The only party that would be inconvenienced by a transfer to California would be Mr. Letskus.

### III.     Failure to State a Claim
#### a. Fraud

In Connecticut, to establish liability for fraud, a plaintiff must be able to show by clear and convincing evidence that: "(1) a false representation was made [by the defendant] as a statement of fact; (2) the statement was untrue and known to be so by [the defendant]; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Internal quotation marks omitted.) *Nazami v. Patrons Mutual Ins. Co.*, 280 Conn. 619, 628 (2006); *see Goldstar Medical Services, Inc. v. Dept. of Social Services*, 288 Conn. 790, 819 (2008).

Mr. Letskus has properly pled a cause of action for fraud against KVC. The allegation asserts that KVC made the false representation that there was no personal guaranty in the Agreement which was known to be untrue by KVC and its representatives at the time it was made. KVC made this representation knowing that Mr. Letskus was reluctant to sign the Agreement on behalf of RPL if it contained a personal guaranty. Mr. Letskus relied on this fact due to his execution of the Agreement on behalf of RPL. Mr. Letskus would not have signed the Agreement had it contained a personal guaranty. In Connecticut, unlike California, a motive to commit fraud does not need to be alleged. Finally, KVC makes the outrageous argument in its Motion that Mr. Letskus fails to allege that KVC "knew otherwise" with respect to the lack of a personal guaranty. Certainly, KVC and its representatives are charged with having knowledge of the contents of its proprietary information, such as the Agreement at hand. Thus, the fact that KVC knew otherwise does not need to be alleged because it is implicit that KVC knew the exact language contained in the Agreement.

### b. *Violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a, et seq.*

Because Connecticut law applies, the CUTPA claim should survive. It is well settled that in determining whether an act or practice violates CUTPA we have adopted the criteria set out in the "cigarette rule" by the federal trade commission for determining when an act or practice is unfair: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-- whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businessmen.

"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Thus, a violation of CUTPA may be established by showing either an actual deceptive practice; or a practice amounting to a violation of public policy. Furthermore, a party need not prove an intent to deceive to prevail under CUTPA . . . The question of whether an action or practice can be the basis of a CUTPA action depends upon all the circumstances of the particular case." (Citations omitted; internal quotation marks omitted.) *Jacobs v. Healey Ford-Subaru, Inc*., 231 Conn. 707, 6725-26 (1995).

Because Mr. Letskus has properly pleaded the elements of CUTPA, this count should stand.

### c.  *Negligent Misrepresentation*

To establish liability for negligent misrepresentation, a plaintiff must be able to demonstrate by a preponderance of the evidence: "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami v. Patrons Mutual Ins*. Co., 280 Conn. 619, 626 (2006).

Because Mr. Letskus has established a cause of action for the more stringent fraud count and because the elements of negligent misrepresentation have been properly asserted, this count should stand.

### d.  *Vexatious Litigation*

In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute.  Both the common law and statutory causes of action "[require] proof that a civil action has been prosecuted . . . ." (Internal quotation marks omitted.) *QSP, Inc. v. Aetna Casualty & Surety Co*., 256 Conn. 343, 361 (2001).  Additionally, to establish a claim for

7

vexatious litigation at common law, one must prove "want of probable cause, malice and a termination of suit in the plaintiff's favor." *Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94 (2007). The statutory cause of action for vexatious litigation exists under §52-568 and "differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages." *Id*. In the context of a claim for vexatious litigation, "the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." *DeLaurentis v. New Haven*, 220 Conn. 225, 256 (1991).

Mr. Letskus has properly pleaded the essential elements for vexatious litigation, both at common law and pursuant to Conn. Gen. Stat. §52-568. This the cause of action for vexatious litigation should stand.

### e. RICO Violations

Mr. Letskus hereby withdraws his claims for RICO violations against KVC.

WHEREFORE, for the foregoing reasons, the Defendants' Motion should be denied in its entirety.

Dated: Fairfield, Connecticut
May 26, 2021

PLAINTIFF: ROBERT LETSKUS, JR.

By: */s/ Michael A. Zamat*
Michael A. Zamat, Esq. (ct28101)
**PETERSON ZAMAT, LLC**
1275 Post Rd., Suite 200-D
Fairfield, CT 06824
Telephone: 203.292.9798
Facsimile: 203.774.1155
Michael@petersonzamat.com

## **CERTIFICATION**

The undersigned certifies that on this 26th day of May 2021, the foregoing was filed electronically and notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/*s/ Michael A. Zamat*
Michael A. Zamat (ct28101)